IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| Halliburton Energy Services, Inc., <br> Halliburton US Technologies, Inc., <br> Halliburton Group Technologies, Inc., <br> Halliburton Technology Partners, LLC <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br> U.S. Well Services, LLC, <br> ProFrac Services, LLC, <br><br>　　　　　Defendants. | CASE NO. 6:22-CV-00905-ADA <br><br> **JURY TRIAL DEMANDED** <br> Related Case to 6:21-CV-00367-ADA <br> Related Case to 6:21-CV-00906-ADA |

**ORDER ON NON-PARTIES DEFENDANT U.S. WELL SERVICES, LLC AND PROFRAC SERVICES, LLC DISCOVERY ISSUES**

Before the Court is Defendants U.S. Well Services, LLC's and ProFrac Services, LLC's ("ProFrac" or "Defendants") motion to compel Halliburton to produce documents related to Halliburton's fluid ends and Defendants' motion to prevent Halliburton from altering Halliburton's initially proposed inspection list. After conducting a hearing on the issues and after a review of the case file and applicable law, the Court rules as follows.

With respect to Defendants' motion to compel Halliburton to produce documents related to Halliburton's fluid ends, the motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. Within one business day of the date of this Order, Halliburton is **ORDERED** to produce the material specifications for Halliburton's next generation of fluid ends. Defendants' motion to compel Halliburton to produce documents related to Halliburton's fluid ends is otherwise **DENIED**.

With respect to Defendants' motion to prevent Halliburton from altering Halliburton's initially proposed inspection list, the motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. Halliburton's previous selection of the Marathon Oil Permian LLC site in West Texas known as the

King George site shall count as one of the six non-electric fracturing sites available to Halliburton for an inspection. Halliburton may replace the XCL Asset site in Vernal, Utah with the Firebird Energy II site in Odessa. Otherwise, and to the extent possible, Halliburton is instructed to inspect sites previously identified in Halliburton's February 2024 identification of sites for inspection. If Halliburton identifies a site for inspection, and if the customer for the requested site has not previously been notified of the requested inspection, Defendants are **ORDERED** to transmit the request to the customer within two business days of receipt of the request from Halliburton and Defendants shall transmit such request to the customer by (a) serving the request on the customer's registered agent for service of process and (b) transmitting the request by e-mail to a known contact point, if any, within the legal department of the customer or through any known outside legal counsel for customer. Defendants shall provide proposed dates for inspections to Halliburton within two weeks of notice to the customer, and inspections shall be scheduled to occur within four weeks of notice to the customer.

The Parties' respective positions are set out in Attachment A.

**IT IS SO ORDERED.**

Signed on this 22nd day of April, 2024.

_____
Honorable Derek T. Gilliland
United States Magistrate Judge

## ATTACHMENT A

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| Halliburton refuses to provide information concerning the materials used in their fluid ends since September 2016, which Defendants have repeatedly requested and is relevant to damages. | **Relief Sought:**<br><br>Halliburton requests that the Court deny ProFrac's requested relief.<br><br>**Plaintiffs' Position:**<br><br>A fluid end is a part of a fracturing pump. Fluid ends, which are made of metal, are expensive and sometimes fail. Halliburton designs and manufactures its own fluid ends. Halliburton does not use fluids ends from third parties and does not provide fluid ends to third parties.<br><br>In 2018, Halliburton used a fluid end that practiced the '333 patent. Halliburton has provided ProFrac discovery on the '333 fluid ends.<br><br>In 2020, Halliburton switched to a fluid end that does not practice the '333 patent. This "next generation fluid end" is made of publicly available 4330V steel. The technical and highly proprietary details of Halliburton's next generation (and non-practicing) fluid end are not relevant to any issue.<br><br>The issue is the value *to ProFrac* from ProFrac's continuing use of fluid ends that infringe the '333 patent. The technical details of Halliburton's next generation fluid ends are irrelevant to the value *that ProFrac* derives from using fluid ends that infringe the '333 patent. Indeed, if Halliburton had never | **Relief Sought:**<br><br>Defendants request the Court order Halliburton to produce documents related to their fluid ends, including material composition, used since September 2016 within three days.<br><br>**Defendants' Position:**<br><br>The '333 Patent requires fluid ends comprised of a particular type of metal.<br><br>Halliburton does not practice the '333 Patent. Instead, Halliburton claims to use fluid ends comprised of some "proprietary" form of commercially available steel called 4330V. 4330V is referenced in the '333 Patent and is a noninfringing alternative. Halliburton buys 4330V. Ex. A at 70:5–7 ("Halliburton does not make any steels. We're not a steel making company. We're a steel using company.") And Halliburton uses 4330V fluid ends because it is more cost effective than using fluid ends claimed in the '333 patent. Ex. B at 86:3–12, 92:22–93:1.<br><br>Defendants requested documents through RFPs related to whether Halliburton practices the '333 Patent [6, 16, and 17], the design, forging, and manufacturing of its fluid ends [46–48], the material used in its fluid ends [25, 29, 30, 38, 39, 40, and 43], noninfringing alternatives and the value of the claimed invention [8 and 18], and damages [9, 13, and 14]. Ex. C. Defendants likewise served interrogatories requesting information related to noninfringing alternatives [19], the value of the claimed invention [15], and damages [3]. Ex. D. These RFPs and interrogatories are relevant at least to the value of the '333 Patent and damages.<br><br>Despite the many discovery requests on this topic, Halliburton steadfastly refuses to provide any |

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| | manufactured a fluid end in its entire history, the issue would still be the value *to ProFrac* from using fluid ends practicing the '333 patent. Halliburton's non-practicing internal designs are irrelevant.<br><br>The requested discovery is also irrelevant to noninfringing alternatives ("NIA") available *to ProFrac*. Halliburton is not seeking lost profits and therefore need not prove the absence of NIAs. *Precision Fabrics* is distinguishable for this reason. Halliburton's next generation fluid ends also cannot be a next-best available alternative *for ProFrac* in a reasonable royalty analysis because Halliburton's fluid ends are not available *to ProFrac* (or to anyone outside of Halliburton).<br><br>ProFrac is free to allege at trial that available 4330V fluid ends are an NIA *for ProFrac*. But, as a matter of logic and common sense, the technical (and proprietary) details of Halliburton's next generation fluid ends are irrelevant because ProFrac cannot obtain Halliburton's next generation fluid ends. Halliburton's fluid ends are not an available alternative *to ProFrac* (as demonstrated by ProFrac filing this motion), and ProFrac must focus on alternatives that are available *to ProFrac*. Garden variety 4330V-based fluid ends are readily available for purchase from third parties, and ProFrac should direct its damages analysis to the costs of fluid ends | discovery into the fluid ends it uses—even instructing witnesses not to answer any question about their composition in deposition. *See* Ex. B at 95:19–97:7. The only reason Halliburton has given for its refusal to produce this relevant discovery is that its fluid ends contain Halliburton trade secrets. That is improper.<br><br>Halliburton will seek millions in damages from Defendants based on alleged infringement of the '333 Patent. To defend that claim, Defendants are entitled to discovery into why Halliburton does not practice the '333 Patent. Defendants are entitled to explore noninfringing alternatives, like the commercially available 4330V, used by Halliburton to assess the value of the '333 Patent. Defendants are also entitled to challenge Halliburton's unproven assertion that its noninfringing fluid ends are proprietary—a claim that Halliburton will no doubt make at trial to explain away why it does not use the purportedly inventive aspects of the '333 Patent.<br><br>Halliburton has no good grounds to refuse to produce this relevant discovery. The claim that its fluid ends comprise proprietary trade secrets is no reason to refuse production. *See Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 561 n.13 (D.S.C. 2018) ("[C]ounsel … contended that its product at issue cannot be considered a non-infringing alternative because, although, not patented, it was proprietary. Because to prevail on the issue [the plaintiff] would have to demonstrate that customers would not have obtained the product from a third party, … this factual issue remains for proof at trial."). Indeed, the protective order in this case expressly recognizes the potential need to disclose trade secrets. *See* Dkt. 19.<br><br>The Court should grant Defendants' requested relief. |

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| | that are available *to ProFrac* (rather than engaging in a needless fishing expedition on proprietary details of non-practicing products). *See, e.g.*, http://www.haimotech.com/Products-and-Services/Fracturing-Equipment-and-Services/Fluid-Ends.html<br><br>Halliburton did not instruct any witness not to answer questions concerning next generation fluid ends. Stan Stephenson, the inventor on the '333 patent, was a long-time Halliburton employee. Mr. Stephenson himself refused to disclose legitimate and tightly held Halliburton "trade secrets wrapped within" the next generation of fluid ends because he did not know whether he had "the liberty to release" the secret information. Ex. B at 95:24-96:10. Mr. Stephenson similarly refused to disclose company trade secrets on the next generation fluid ends in the -367 case (and Defendants never complained). In sum, technical details concerning Halliburton's next generation of fluid ends are not relevant to any issue. | |

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| Whether the Court should prohibit Halliburton's attempt to modify its initially proposed inspection list. | **Relief Sought:**<br><br>Halliburton requests that the Court deny ProFrac's requested relief and permit Halliburton to proceed with the court-ordered inspections according to Halliburton's revised list of sites to be inspected. Halliburton requests that the Court order ProFrac to assist with the prompt scheduling of the inspections.<br><br>**Plaintiffs' Position:**<br><br>The Court's inspection order is not difficult to implement. The parties conducted *mutual* inspections in the -367 case within *a month* of the Court's order and without any issues. The difference here is that the inspections are *unilateral*, and ProFrac has no interest in advancing the inspections—and has not scheduled a single inspection.<br><br>ProFrac's failure to cooperate required Halliburton to revise its inspection list because many of the jobs on the original list ***are no longer available***. ProFrac's fracturing jobs (*i.e.*, the subject of discovery) are short lasting and often end before an inspection can occur. This has happened at least twice, and other jobs will be ending soon. Instead of complying with its discovery obligations, ProFrac has hid behind customer objections, | **Relief Sought:**<br><br>Defendants request that the Court prevent Halliburton from altering its initially proposed inspection list before objections are resolved.<br><br>**Defendants' Position:**<br><br>Halliburton requested a list of active fleets and identified eight fleets to inspect from seven customers including ConocoPhillips, Diamondback Energy, Encino Energy, Marathon Oil Corporation, and XCL Resources. Ex. A. After being contacted by Defendants, four of seven customers objected. Halliburton then agreed to multiple customer extension requests. Then, without permission, Halliburton revised its inspection list, removing three customers and adding three new ones (Northeast Natural Energy, Gulfport Energy, and Firebird Energy). Ex. B. Defendants oppose for several reasons.<br><br>**First,** Defendants have tried to facilitate these inspections and have provided all requested information to Halliburton, but Defendants do not control their customers and cannot compel them to consent to Halliburton's inspection requests at customer-controlled wellsites. Halliburton opted to seek inspections on customer-controlled sites via the Court's order, which gave customers the right to object. Confronted with the complexities of the process it spearheaded and the extensions it declined to oppose, Halliburton has altered its inspection list at Defendants' and their customers' expense. Defendants' customers are actively opposing Halliburton's inspections for at least the reasons stated in their objections. *See, e.g.,* Dkt. Nos. 192, 203, 212.<br><br>**Second,** Dr. Wooley testifying in a vacuum as a third-party expert on behalf of USWS (which is not involved in the requested inspections) was not an "admission" by Defendants about the ease of Halliburton's requested inspections. Specific customer operations and equipment configurations, paired with |

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| | forcing Halliburton's counsel to negotiate with ProFrac's own customers while ProFrac finishes its jobs before an inspection can take place. Moreover, ProFrac has not even scheduled inspections of its operations for those customers with no objections. Had ProFrac offered even a minimum of cooperation, the inspections would have moved forward already, and this discovery dispute would be unnecessary.<br><br>**First**, Halliburton is seeking discovery *from ProFrac*, not ProFrac's customers. ProFrac controls the equipment and operations at the sites. The fluids are possessed and prepared by ProFrac, and ProFrac routinely samples and tests the exact same fluid (with no customer objections or need for a subpoena). ProFrac's criticisms about proceeding under "the Court's order" are suspect when considering that ProFrac inspected Halliburton's fleets in the previous lawsuit under a similar order.<br><br>**Second**, by ProFrac's admission, Halliburton's inspection will not cause unnecessary disruption to ProFrac and its customers: | Halliburton's inspection terms differing from the earlier case, including multiple days, four persons per party, and a drone, have given rise to legitimate customer concerns.<br><br>**Third,** Halliburton's rationale for the modifications lacks merit. Halliburton sent its revised list based on an inaccurate claim that certain sites were unavailable. Defendants clarified that all initially identified fleets were still operational. Ex. C. April 11 is the end of fact discovery—the fleets in question are continuing to work, and Halliburton has Defendants' planning calendar.<br><br>Halliburton's articulated rationales to "move forward" with customers who have no objections—dropping requests for inspections where customers did object—and to avoid geographic concerns regarding Fleet 39 lack merit. Halliburton's shifting targets, admittedly based on customer objections and beliefs of non-infringement were not contemplated by the Court's order. And Halliburton originally picked Fleet 39, already well aware of its "inconvenient" location.<br><br>Halliburton's requests have burdened Defendants' customers, strained customer relationships, and eroded goodwill. Halliburton's modified inspection list will strain more of Defendants' customer relationships, and Halliburton's abandoned requests leave other relationships in their wake. Halliburton's assertion that inspections will not result in disruptions ignores multiple customers' concerns and glosses over dissimilarities in customers' procedures and setups.<br><br>Halliburton should be held to its initial identifications, particularly until all objections are resolved, and should be prevented from harassing Defendants' customers and further straining Defendants' customer relations. Halliburton cannot shift the blame to Defendants, who have followed the Court's order regarding notifications. |

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| | Q. Okay. Now, to the extent permitted to disrupt normal operat[ions] Dr. Eiselstein's site visits, woul[d] operations to obtain a sample from opinion?<br>A. Not in my opinion. No.<br><br>-367 Trial Tr. at 1084:13-18 (Dr. Wooley). And ProFrac has taken the clear position that Halliburton must test and sample the fluid to carry its burden:<br><br>Q. Okay. And without actual fracking fluid, would you be able concentration was?<br>A. There's no way to do that<br><br>*Id.* at 1084:19-22.<br><br>**Third**, good reasons exist for modifying Halliburton's initial selections to address updated information from ProFrac. Replacing Fleet 39 in Utah with a different e-frac fleet in Texas (Fleet 38) would allow Halliburton to quickly conduct multiple inspections. ProFrac did not include any Texas-based e-frac fleets in its initial list of fracturing jobs. Ex. D. Traveling to Odessa is easier for everyone than traveling to a site that is a three-hour drive from the Salt Lake City airport.<br><br>One customer (Marathon) informed this Court that the site selected for inspection used fresh water, not produced water. It should be no surprise that | |

| ISSUE | PLAINTIFFS' POSITION AND REQUESTED RELIEF | DEFENDANTS' POSITION AND REQUESTED RELIEF |
|---|---|---|
| | Halliburton seeks to inspect eight sites that use produced water. Halliburton should not be required to guess which site to inspect based on incomplete information as to produced/fresh water. ProFrac knows which of their fracturing sites use produced water and should provide this information to Halliburton for the sake of scheduling inspections.<br><br>Finally, the jobs for Encino, Marathon, and XCL will end by April 11, the day after the hearing. Ex. C; ECF. 207. Thus, Halliburton will have to select new sites to inspect anyway, rendering ProFrac's complaints moot. ProFrac's attempts to "run out the clock" on Halliburton's inspections should be rejected. | |