IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| Halliburton Energy Services, Inc., Halliburton US Technologies, Inc., Halliburton Group Technologies, Inc., Halliburton Technology Partners, LLC, <br><br>     Plaintiffs, <br> v. <br><br> U.S. Well Services, LLC, ProFrac Services, LLC, <br><br>     Defendants. | Civil Action No. 6:22-cv-905-ADA-DTG <br><br> **JURY TRIAL DEMANDED** <br><br> **Related Case to No. 6:21-cv-367-ADA-DTG** <br> **Related Case to No. 6:22-cv-906-ADA-DTG** |

## ORDER ON DISCOVERY DISPUTE CHART REGARDING ELECTRIC HYDRAULIC FRACTURING DISCOVERY

Before the Court are Plaintiffs Halliburton Energy Services, Inc.'s, Halliburton US Technologies, Inc.'s, Halliburton Group Technologies, Inc.'s, and Halliburton Technology Partners, LLC's (hereinafter collectively, "Halliburton's") motion to compel information concerning Defendants U.S. Well Services, LLC's and ProFrac Services, LLC's ("Defendants'") electric hydraulic fracturing services. The parties' position statements are attached as Exhibit 1. After reviewing the briefs and holding a hearing on the issues, the Court orders the following:

Halliburton's request concerning Issue 1 is **GRANTED**. Defendants are **ORDERED** within five days to make a reasonable inquiry and provide additional information, if any, for electric fracturing fleets after May 24, 2022 with respect to missing fuel source information for these fleets, stating the fuel source for the specific fracturing fleet for each specific job, or stating that, after a reasonable inquiry, Defendants were unable to determine that information.

Halliburton's request concerning Issue 2 is **GRANTED-IN-PART**. Defendants are **ORDERED** within one week to produce post-margin analyses and accepted customer proposals for

electric hydraulic fracturing fleet jobs since May 24, 2022. The Court **DENIES** Halliburton's request for invoices.

**IT IS SO ORDERED.**

**SIGNED this 6th day of May, 2024.**

_____
**DEREK T. GILLILAND**
**UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT 1

| ISSUES | PLAINTIFFS' POSITION | DEFENDANTS' POSITION |
|---|---|---|
| **Issue 1:** Defendants have not provided a fulsome response to Interrogatory No. 1, served jointly on all Defendants, and which seeks information regarding instances of hydraulic fracturing. | **Summary of the Issue — Dispute #1:**<br><br>Interrogatory No. 1 was addressed jointly to U.S. Well Services LLC and ProFrac Holdings Corp. (each further defined to include any of their "other business entities"): "Identify and describe each instance since September 1, 2016 in which You performed hydraulic fracturing services using Your hydraulic fracturing systems," followed by a specific list of exemplary information requested. **Ex. 1.**<br><br>| Date(s) | Fleet name or identification | Customer name | Fuel source (CNG, LNG, field gas, diesel, etc.) | Location | Equipment used (e.g., blender, transfer pump, fracturing pump, generator, natural gas conditioning equipment, chemical additive system, sand box, sand silo, hydration unit, load sensors, etc.) | Software used | Revenue received | Profit allocated |<br>|---|---|---|---|---|---|---|---|---|<br><br>The requested information is tailored to demonstrating specific instances of infringement for the asserted method claims. The asserted patents have different issue dates, and the patents are directed to different types of fracturing fleets (e.g., some are limited to electric-fracturing fleets). The fuel source (e.g., field gas or compressed natural gas) is important, because the asserted claims are limited to certain types of fuel.<br><br>Defendants initially cited two spreadsheets—USWS90X-006915.004 (fracturing jobs before 2023) and USWS90X-006915.006 (fracturing jobs in 2023) ("Summary Spreadsheets"). See **Ex. 2-4** (excerpted). The spreadsheets are incomplete because they: | **Defendant's Position on Dispute #1:**<br><br>In response to Interrogatory No. 1, among other narrative responses and business records, Defendants created and produced summary spreadsheets that identified the date, job number, fleet number, customer, fuel source, location, equipment description, software description, and revenue for each hydraulic fracturing job from January 2017 to December 2023. Defendants have updated these spreadsheets as information has become available and in response to specific inquiries from Halliburton.<br><br>In addition, Halliburton already possesses numerous documents, many of which Defendants identify in their interrogatory response, providing data related to fracturing jobs that were produced in this and the prior litigation. *E.g.*, USWS0102358; USWS0102357; USWS0102360; USWS0102355; USWS0102356; USWS90X-0866629; USWS90X-0866627; USWS0102359; *see also* Kindler Rep. at 117, Ex. 4; Kinder Rebuttal Rep. at Exs. 1, 5.<br><br>Halliburton's complaint regarding fuel source data is without merit. As has been repeatedly communicated, Defendants have conducted a reasonable investigation and have provided all the |

Case 6:22-cv-00905-ADA-DTG   Document 240   Filed 05/06/24   Page 5 of 9

| ISSUES | PLAINTIFFS' POSITION | DEFENDANTS' POSITION |
|---|---|---|
| | • merely indicate "electric" as the fuel source for e-frac jobs, but do not identify the fuel source for that electricity (e.g., field gas, compressed natural gas) for each electric fracturing job.<br><br>See **Ex. 5**.<br><br>As to the "fuel source," Defendants identified "electric," but electricity is not a fuel. Defendants have not identified the specific fuel (e.g., compressed natural gas, field gas) used to generate the electricity, and have refused to produce the underlying documents for Plaintiffs to determine that information for each job (*see* Issue 2). **Ex. 2-3**. Defendants are in possession of this information, because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Ex. 7**, Guth Dep. at 46:10-47:10; *see* 48:13-49:15 (explaining why ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.<br><br>Defendants have refused to provide a date certain for supplementing interrogatories with the requested information. **Ex. 6**.<br><br>In a previous version of the Discovery Dispute that was about to be served with the Court, Defendants stated in their position: "Defendants do not track the type of fuel used on any particular job in the ordinary course of business." **Ex. 8**. This was erroneous. On April 5, 2023, as Halliburton was finalizing the April 2 discovery | information regarding fuel source that has been located.<br><br>At the outset, Defendants assert that its customers—not Defendants—generally provide the underlying gas that generates electricity. Ex. 16, Fournier Dep. at 225:18-226:13.<br><br>First, Defendants designated a corporate representative to testify specifically as to which customers identified in the spreadsheet at issue used field gas, CNG, or LNG. *See, e.g.*, Ex. 16, Fournier Dep. at 59:23-60:12, 154:1-157:17, 160:17-18, 191:10-15 (explaining that 23 jobs were performed with CNG, and the other 47 were performed with field gas).<br><br>Second, Halliburton had the opportunity to depose other witnesses about fuel source data, who also testified regarding whether certain customers used fuel gas or CNG. *See* Ex. 9, Donaldson Dep. at 489:13-15; Ex. 7, Guth Dep. at 34:23-35:11.<br><br>Third, to the extent a document is in Defendants' possession and located after a reasonable search, Defendants have produced documents indicating fuel source data as to specific jobs and customers. *E.g.*, Ex. 17, USWS90X-0275465.<br><br>Finally, Defendants recently produced an additional spreadsheet showing stage data on a job-by-job basis, including total diesel, total field |

3

| ISSUES | PLAINTIFFS' POSITION | DEFENDANTS' POSITION |
|---|---|---|
| | dispute chart, Halliburton took the second deposition of Defendants' corporate witness, Corey Donaldson. When asked about which fracturing jobs used compressed natural gas versus field gas, he testified that "somebody [at ProFrac] could figure it out" and "[t]hat sounds like something somebody should know." **Ex. 9** (Donaldson Dep. Tr.) at 482-483. Magically after the next break, Defendants' produced an Excel spreadsheet that indicates for a number of jobs whether the fuel used was diesel, CNG, or field gas. **Ex. 10**. Halliburton expressly requested this information in July 2023, but ProFrac waited to gather the information until "during a break in the deposition," and it took Mr. Donaldson only "[a]bout five minutes" to prepare the spreadsheet on April 5. No manual entry was needed, as it "was a straight data dump." **Ex. 9** at 508-509.<br><br>With this spreadsheet, the fuel source remains missing for some jobs. **Ex. 10**. Someone at ProFrac must know which fuel source was used for each of the e-frac jobs, so Halliburton invited ProFrac to yet another meet and confer and identified specific jobs that were missing from the new spreadsheet. With fact discovery closing April 11, ProFrac is "still investigating." **Ex. 6**.<br><br>**Relief Sought—Proposed Order:**<br><br>Within three calendar days of this Order, Defendants are ordered to fully supplement their response to Interrogatory No. 1 to identify with specificity: | gas, and total CNG. Halliburton deposed a ProFrac witness about this spreadsheet as well as about specific jobs and customers. *See* **Ex. 9**, Donaldson Dep. at 489-493, 507-531.<br><br>Halliburton possesses all fuel source data that Defendants are aware of based on a reasonable investigation, and Defendants are not aware of any other means by which fuel source information has been tracked in the ordinary course of business. **Ex. 16**, Fournier Dep. at 232:3-24 (testifying that ProFrac does not have a database tracking information relating to power generation for its electric fleets).<br><br>**Relief**: Order that "Halliburton's requested relief is denied." |

| ISSUES | PLAINTIFFS' POSITION | DEFENDANTS' POSITION |
|---|---|---|
| | • the specific fuel source (such as compressed natural gas or field gas) used for each job. | |
| **Issue 2:** Defendants have not produced all pre-margin analyses, customer proposals, post-margin analyses, and power-generation invoices sent to customers for electric fracturing jobs. | **Summary of the Issue — Dispute #2:**<br><br>Plaintiffs seek margins analyses, customer proposals, and invoices for Defendants' e-frac jobs over a 2-year period. *See* **Ex. 11** (RFP 23, 24, 26). Based on the Summary Spreadsheets (see Issue 2), there are about 75 such jobs.<br><br>Plaintiffs seek:<br><br>Job Proposals: Defendants send job proposals to customers describing the expected services and which entity (ProFrac v. customer) is responsible for securing equipment (e.g., generators) and supplies (e.g., proppant or fuel). Defendants maintain a "SharePoint folder for each customer" that contains the proposals, and there is a specific email address (proposals@profrac.com) for the proposals. **Ex. 12** at 69:6-70:23; **Ex. 13** at 160:16-162:18. Defendants have not ensured that proposals are produced for each e-frac job, and some are missing (e.g., for Blackhill and certain Repsol jobs).<br><br>Margins analyses: A pre-margin analysis categorizes ███████████████, which then inform the price sent to customers. ProFrac prepares a post-margins analysis after it completes a job that it sends to its CEO. *See, e.g.,* **Ex. 14**. Again, Defendants have not ensured that the margins documents are produced for each e-frac job identified in the Summary Spreadsheets. This information is relevant to damages (e.g., apportionment) | **Defendant's Position on Dispute #2:**<br><br>Halliburton rests on three overly broad and burdensome RFPs—including a request for "[a]ll [d]ocuments relating to or concerning the Accused Products"—to manufacture this dispute.<br><br>Halliburton complains about "Job Proposals" and "Margins Analyses," but Defendants have already produced nearly 1000 of these documents. Halliburton has not identified any missing information or information that might be found in these documents that is relevant and not cumulative of already-produced information. Indeed, as noted above, among other materials, Halliburton has contracts and deposition testimony related to "which entity (ProFrac v. customer) is responsible" for what on a frac job.<br><br>Halliburton also complains about "Invoices." Defendants cannot systematically collect and produce invoices. It must be done on a job-by-job basis. It is a burdensome task, especially when Defendants are amidst closing out their quarterly financials. And Halliburton has not identified any specific job it is interested in.<br><br>But, as Defendants have explained to Halliburton, invoices are generated from approved "field tickets," and Defendants have provided all field |

5

| ISSUES | PLAINTIFFS' POSITION | DEFENDANTS' POSITION |
|---|---|---|
| | and to divided infringement (e.g., which entity arranges for each piece of equipment and supplies).<br><br>Invoices for power generation and fuel: The power-generation companies testified that they have not "ever sent invoices directly to ProFrac's customers." **Ex. 15** at 55:5-7. Rather, they charge ProFrac, and ProFrac charges its customers. Defendants have not produced documents showing actual charges to ProFrac's customers for power-generation equipment (e.g., generators, gas conditioning equipment) and fuel.<br><br>Defendants' corporate witness, Corey Donaldson, testified that "[f]or the most accurate financials of revenue per stage," he would *not* look at the summary field ticket data, but would instead "look at the invoices from accounting." He further agreed that "the most accurate source to understand whether or not ProFrac is charging customers for the turbine rental would be in the invoices sent to customers." **Ex. 9** at 474, 499-500.<br><br>**Relief Sought—Proposed Order:**<br><br>Within three calendar days of this Order, Defendants are ordered to produce all post-margin analyses, customer proposals, and invoices regarding power generation and fuel. This Order is limited to fracturing jobs actually conducted since May 24, 2022 (i.e., as opposed to bids that Defendants did not win). This Order is further limited to fracturing jobs conducted with electric-fracturing fleets. | ticket data from Defendants' database that keeps and maintains in the ordinary course of business all approved field tickets. Invoices are duplicative of the field ticket data already produced to Halliburton.<br><br>While some invoices are generated based on field tickets approved outside Defendants' usual database, these invoices are similar in kind and largely duplicative of the type of field ticket data Defendants already produced. Collecting and producing invoices is thus not proportionate to the needs of the case.<br><br>Halliburton has explained the reason it desires the invoices is to confirm that Defendants pass through the turbine fee. Defendants have confirmed this fact in their supplemental interrogatory response.<br><br>In addition, Defendants have produced a representative sample of customer invoices generated from in database field tickets and from field tickets approved outside the usual database. This includes invoices showing "actual charges to ProFrac's customers for power-generation equipment," including the pass-through charge referenced above.<br><br>Halliburton, again, fails to specify what information it believes is missing, or any reason why it is entitled to the referenced documents. |

| ISSUES | PLAINTIFFS' POSITION | DEFENDANTS' POSITION |
|---|---|---|
| | | **Relief**: Order that "Halliburton's requested relief is denied." |